IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JORDAN BROWN, ) | |
| ) | |
| Plaintiff, ) | |
| ) Civil Action No. 20-985 | |
| v. ) | |
| ) | |
| JANICE WILSON, JEFFREY MARTIN, ) | |
| ROBERT MCGRAW, TROY ) | |
| STEINHEISER, | |
| Defendants. | |

**MEMORANDUM ORDER**

Jury selection and trial are scheduled to commence in this civil rights action on December 3, 2024. Presently before the Court is Plaintiff's Motion Regarding Jury Selection. (Docket No. 204). Plaintiff first requests that the Court employ a juror questionnaire before the voir dire process commences, and he has filed the questionnaire he submits the parties previously jointly proposed to utilize.[1] (Docket Nos. 204, 204-1). Plaintiff submits that a juror questionnaire is necessary because the underlying criminal case, and this civil rights case, have attracted local, state, and national media attention, which culminated in a 20/20 television episode. (Docket No. 204, ¶ 2). Consequently, Plaintiff urges that there is a great need to "root out explicit or implicit bias among potential jurors." (*Id.*, ¶ 4). If the Court does not employ the proposed juror questionnaire, Plaintiff requests that it adopt the additional voir dire questions he has submitted. (*Id.*, ¶ 7). Further, in addition to standard voir dire in open court, Plaintiff requests that the Court conduct individual voir dire in chambers with all jurors. (*Id.*, ¶ 6). Finally, Plaintiff requests that the attorneys be given adequate time to question prospective jurors about important issues, and advocates that the

---

[1] Since the joint juror questionnaire originally was submitted, there has been a substitution of defense counsel. Current defense counsel has not filed a response to Plaintiff's Motion; however, Attorney Boland indicated at the Oral Argument held on November 7, 2024, that the defense defers to the Court as to how the voir dire process is conducted.

1

Court should refrain from trying to rehabilitate jurors with leading questions. (*Id.*, ¶¶ 17-20). For reasons that follow, Plaintiff's Motion will be granted in part and denied in part.

The dual purposes of voir dire are to "enabl[e] the court to select an impartial jury and [to] assist[] counsel in exercising peremptory challenges." *Mu'Min v. Virginia*, 500 U.S. 415, 431 (1991). "Since the trial judge 'must reach conclusions as to impartiality and credibility by relying on their own evaluations of demeanor evidence and of responses to questions,' the trial judge is necessarily vested with broad discretion in determining the manner and scope of the questioning." *Butler v. City of Camden, City Hall*, 352 F.3d 811, 815 (3d Cir. 2003) (quoting *Rosales–Lopez v. United States*, 451 U.S. 182, 188 (1981)); *see also Waldorf v. Shuta*, 3 F.3d 705, 710 (3d Cir. 1993) ("Because voir dire determinations 'rely largely on . . . immediate perceptions', district courts have been awarded ample discretion in determining how best to conduct the voir dire.") (quoting *Rosales–Lopez*, 451 U.S. at 189). This discretion necessarily includes whether to use a juror questionnaire in conjunction with the voir dire process. *See, e.g., United States v. Serafini*, 57 F. Supp. 2d 108, 111 (M.D. Pa. 1999) ("Whether to allow written questionnaires to be submitted to prospective jurors in advance of the jury selection date, and the content of any such questionnaire, falls within the wide discretion accorded to the trial court in conducting voir dire."); *United States v. Miah*, Crim. No. 21-110, 2021 WL 4078662, at *2 (W.D. Pa. Sept. 8, 2021) ("[I]n the exercise of its discretion, the Court concludes that it is not necessary to use a questionnaire in this case."); LCrR 24.2 ("In its discretion, the Court may require potential jurors to complete a questionnaire before the formal voir dire process commences.").

In the exercise of its discretion here, the Court concludes that it is not necessary to utilize a juror questionnaire. Despite noting that the case has attracted local, state, and national media attention, which culminated in a 20/20 episode, Plaintiff does not contend that any such news

2

media coverage, including the referenced television episode, has been even remotely recent. (*See* Docket No 204, ¶ 2).  In the Court's estimation, employing a juror questionnaire may have the undesired consequence of prompting potential jurors who otherwise do not recollect or are entirely unfamiliar with the background of the case to conduct targeted online searches, which could, in turn, impact their impartiality.  Furthermore, even if this case had drawn recent pretrial publicity, the Supreme Court instructs that " 'primary reliance on the judgment of the trial court makes [especially] good sense' because the judge 'sits in the locale where the publicity is said to have had its effect' and may base her evaluation on her 'own perception of the depth and extent of news stories that might influence a juror.' " *Skilling v. United States*, 561 U.S. 358, 386 (2010) (quoting *Mu'Min*, 500 U.S. at 427).  Thus, this Court is best positioned to orally inquire whether prospective jurors know anything about the case and evaluate the same.

Moreover, the Court believes that oral voir dire dialogue between it and potential jurors is important and necessary because that process "affords those present an ability to assess impartiality through 'the prospective juror's inflection, sincerity, demeanor, candor, body language, and apprehension of duty,' which assessment cannot be matched through reliance upon a written record." *United States v. Montes*, Crim. No. 5:12CR29-01-02, 2013 WL 1347284, at *3 (N.D. W.Va. Apr. 3, 2013) (quoting *Skilling*, 561 U.S. at 386).  Consequently, in-person oral voir dire will afford "a more intimate and immediate basis for assessing the venire member's fitness for jury service," *id.* (quoting *Skilling*, 561 U.S. at 386-87), that otherwise cannot be gleaned from reviewing written responses to a juror questionnaire.  *See also United States v. Manfredi*, Crim. No. 07-352, 2009 WL 3634083, at *2 (W.D. Pa. Oct. 30, 2009) (recognizing that oral voir dire permits counsel and the parties "to observe jurors' reactions and body language in response to questioning" and "enable[s] them to fully evaluate the potential jurors including the ability to

observe the many subtleties of human interaction that can be lost in a writing"). Finally, in conducting oral voir dire, the Court "will be sensitive to the jurors' needs to the extent that individual voir dire is needed." *Id.*

Turning to Plaintiff's other requests (that is, to adopt the additional voir dire questions he has submitted; to conduct individual voir dire in chambers with all jurors; to give the attorneys adequate time to question prospective jurors about important issues; and for the Court to refrain from trying to rehabilitate jurors with leading questions), the Court will conduct voir dire in accordance with Federal Rule of Civil Procedure 47. That Rule, which provides the procedure for empaneling a civil jury, reflects the discretion granted to the district court in the voir dire process. *See* Fed. R. Civ. P. 47(a) (providing that "[t]he court *may permit* the parties or their attorneys to examine prospective jurors or *may itself* do so") (emphasis added); *James v. Continental Ins. Co.*, 424 F.2d 1064, 1065 (3d Cir. 1970) (explaining that Rule 47(a) "confers upon the trial judge broad discretion as to the manner in which voir dire is conducted and the type and scope of questions to be asked"). Consistent with Rule 47(a), if the court examines the jurors, "it must permit the parties or their attorneys to make any further inquiry it considers proper, or must itself ask any of their additional questions it considers proper." Fed. R. Civ. P. 47(a). Here, the parties have submitted proposed voir dire questions in accordance with the Court's Amended Pretrial Order providing that "counsel may propose supplemental questions to the standard voir dire questions." (Docket No. 128, ¶ A.7). The Court will review the parties' proposed voir dire questions and include those questions it considers proper, along with its standard voir dire. *See United States v. Rabb*, 394 F.2d 230, 233 (3d Cir. 1968) ("There is no error in the conduct of the voir dire by the court, provided that the attorneys are permitted to submit additional written questions to the trial judge so that they can be submitted to the prospective jurors if deemed 'proper' by the trial judge."). The

4

Court will pose certain voir dire questions in open court, and it will conduct individual voir dire privately regarding other matters. During individual voir dire, counsel will be afforded the opportunity to ask follow-up questions as the Court deems appropriate under the circumstances.

Finally, as to Plaintiff's contention that the Court should refrain from trying to rehabilitate jurors with leading questions, that request is denied to the extent Plaintiff seeks to limit the Court's voir dire questioning in any manner. "It is the district court's duty to determine the impartiality of the potential jurors including to assess 'whether the juror holds a particular belief or opinion that will prevent or substantially impair the performance of his [or her] duties as a juror in accordance with his [or her] instructions and his [or her] oath' and, thus, whether the juror should be excused for cause." *Manfredi*, 2009 WL 3634083, at *1 (quoting *Kirk v. Raymark Indus., Inc.*, 61 F.3d 147, 153 (3d Cir. 1995)). "A juror is impartial if he or she can lay aside any previously formed impression or opinion as to the merits of the case and can render a verdict based on the evidence presented in court." *Kirk*, 61 F.3d at 153 (internal quotation marks and citation omitted). Therefore, while the Court "should not rely simply on the jurors' subjective assessments of their own impartiality," *id.*, it is appropriate for the Court to probe whether a potential juror can lay aside any previously held opinion and render a verdict based on the evidence presented in order to make an impartiality determination.

In sum, in its discretion, the Court believes that the administration of justice in this case is best achieved through the use of Court-conducted oral voir dire as described herein. In the Court's estimation, such a voir dire process is the most fair, impartial, and efficient way to select the jury in this case. In order to facilitate an orderly voir dire process, the Court will provide the parties a written version of the oral voir dire questions and address any objections to the questions at the pretrial conference.

Based on the foregoing, the Court enters the following Order:

AND NOW, this 18th day of November, 2024, IT IS HEREBY ORDERED that Plaintiff's Motion Regarding Jury Selection, (Docket No. 204), is GRANTED IN PART AND DENIED IN PART as follows:

(1) the Motion is DENIED to the extent that Plaintiff requests the Court to utilize a juror questionnaire;

(2) the Motion is GRANTED to the extent that Plaintiff has been permitted to submit proposed voir dire questions, which the Court will review, and any appropriate questions will be included along with the Court's standard voir dire;

(3) the Motion is GRANTED to the extent that the Court will conduct voir dire in open court, but it will conduct individual voir dire privately concerning certain matters. During individual voir dire, counsel will be afforded the opportunity to ask follow-up questions as the Court deems appropriate under the circumstances; and,

(4) the Motion is DENIED to the extent that Plaintiff seeks to limit the Court's voir dire questioning in any manner.

*s/ W. Scott Hardy*
W. Scott Hardy
United States District Judge

cc/ecf: All counsel of record